ATTORNEYS FOR APPELLANT
Susan K. Carpenter
Public Defender of Indiana

Hope Fey
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General of Indiana

Richard C. Webster
Deputy Attorney General
Indianapolis, Indiana

# In the
# Indiana Supreme Court

No. 48S02-0503-PC-127

KENYAN L. TAYLOR,

*Appellant (Petitioner below)*,

v.

STATE OF INDIANA,

*Appellee (Respondent below)*.

Appeal from the Madison Superior Court, No. 48D03-9302-CF-70
The Honorable Thomas J. Newman, Jr., Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 48A02-0402-PC-133

**January 17, 2006**

**Sullivan, Justice.**

Kenyan Taylor was convicted of murder as Mose Bowling's accomplice. Taylor's lawyer did not ask that the jury be told that in order for Taylor to be guilty as an accomplice, the jury had to find that Bowling had killed "knowingly or intentionally." Because of this, the Court of Appeals reversed Taylor's conviction. Following authority from several other jurisdictions, we

hold that a defendant can be guilty as an accomplice even if the principal does not act "knowingly or intentionally."

## Background

Kenyan Taylor and Mose Bowling went to Walter Anderson's home to demand money that Anderson allegedly owed Taylor. An argument ensued and Anderson was shot. Anderson subsequently died from a gunshot wound that penetrated his heart. Taylor was charged with and convicted of murder and sentenced to a term of 60 years imprisonment.

Taylor appealed directly to this Court, contending, among other things, that there was insufficient evidence to support his murder conviction. Taylor v. State, 676 N.E.2d 1044, 1046 (Ind. 1997). Finding that the evidence "clearly support[ed]" the jury's conclusion that Taylor was guilty of murder beyond a reasonable doubt, we affirmed Taylor's conviction. Id. at 1047.

Taylor then sought post-conviction relief from his murder conviction and sentence, arguing, among other things, that he was denied effective assistance of trial counsel because counsel failed to object to accomplice liability instructions that Taylor contended were incorrect. Taylor also argued that he was denied effective assistance of appellate counsel because counsel failed to raise all meritorious claims. The post-conviction court denied Taylor's petition for post-conviction relief.

Taylor appealed the denial of post-conviction relief to the Court of Appeals, raising the following six issues: (1) whether he was denied a fair trial and the due process of law to which he was entitled when the state pursued an accomplice liability theory at the end of his original trial; (2) whether the content and effect of the accomplice liability instructions given at his original trial were such as to entitle him to have his conviction vacated; (3) whether he was denied the effective assistance of trial counsel to which he was entitled when counsel did not (a) object to instructions and a verdict form permitting conviction without a unanimous verdict, (b) object to an accomplice liability instruction on the basis that it omitted an essential element of the offense, and (c) tender a lesser-included accomplice liability instruction; (4) whether his sentence of 60

2

years was manifestly unreasonable; (5) whether he was denied the effective assistance of appellate counsel to which he was entitled because appellate counsel did not claim on direct appeal that (a) the trial court had erred in allowing the State to introduce an accomplice liability theory at the end of the trial without notice to the defense, (b) it had been fundamental error for the trial court to give improper accomplice liability instructions, and (c) Taylor's sentence was manifestly unreasonable; and (6) whether the post-conviction court committed reversible error by excluding an affidavit that Taylor contended constituted newly-discovered evidence.

The Court of Appeals found that Taylor was entitled to post-conviction relief because he was denied effective assistance of trial counsel when counsel did not oppose the accomplice liability instructions given at his original trial. Taylor v. State, 820 N.E.2d 691, 695-96 (Ind. Ct. App. 2005).

The State petitioned to, and we granted, transfer. Taylor v. State, 831 N.E.2d 741 (Ind. 2005). We now affirm the judgment of the post-conviction court, except as to sentencing, and remand to the trial court for a new sentencing order.

**Discussion**

Upon denial of post-conviction relief, Taylor raised the issues set forth above. Because the Court of Appeals found one of his claims of ineffective assistance of trial counsel to be dispositive, it did not address the other issues. Because we have granted transfer, all of the issues raised by Taylor are before us as if this appeal had initially been filed in this Court. See Ind. Appellate Rule 58(A).

**I**

Taylor argues that the post-conviction court improperly excluded newly-discovered evidence. At Taylor's trial, Shaun Beasley testified that he heard Taylor state, "If he don't have my money by twelve o'clock, I'm gonna kill 'em." Tr. 933. At the post-conviction hearing, Beasley was called to testify on Taylor's behalf, but Beasley refused on Fifth Amendment grounds. Tay-

3

lor then tendered an affidavit signed by Beasley, which the court refused to admit on grounds of lack of relevance and lack of proper foundation. In the affidavit, Beasley claimed that he did not hear Taylor make the statement. Taylor contends that this affidavit was newly-discovered evidence requiring a new trial.

This Court has enunciated nine criteria for admission of newly-discovered evidence.

> [N]ew evidence will mandate a new trial only when the defendant demonstrates that: (1) the evidence has been discovered since the trial; (2) it is material and relevant; (3) it is not cumulative; (4) it is not merely impeaching; (5) it is not privileged or incompetent; (6) due diligence was used to discover it in time for trial; (7) the evidence is worthy of credit; (8) it can be produced upon a retrial of the case; and (9) it will probably produce a different result at retrial.

Carter v. State, 738 N.E.2d 665, 671 (Ind. 2000) (citing Fox v. State, 568 N.E.2d 1006, 1007 (Ind. 1991)). "This Court analyzes these nine factors with care, as 'the basis for newly discovered evidence should be received with great caution and the alleged new evidence carefully scrutinized.'" Id. (quoting Reed v. State, 508 N.E.2d 4, 6 (Ind. 1987)). The burden of showing that all nine requirements are met rests with the petitioner for post-conviction relief. Webster v. State, 699 N.E.2d 266, 269 (Ind. 1998).

Here, Taylor has not shown that this affidavit meets all the criteria. Most notably, this affidavit would be used merely to impeach Beasley's trial testimony. Taylor argues that this evidence is not merely for impeachment because "its tendency would be to obliterate or destroy the previous evidence that Beasley gave at the trial." Br. of Petitioner-Appellant at 48 (quotations omitted). Taylor also states that the affidavit "was relevant because it tended to show that Beasley was lying at the trial." Br. of Petitioner-Appellant at 47. We do not see how using the affidavit to show that Beasley was lying at trial would not be impeachment.[1]

---

[1] "Impeachment" is defined as "[t]he act of discrediting a witness, as by catching the witness in a lie or by demonstrating that the witness has been convicted of a criminal offense." Black's Law Dictionary 768 (8th ed. 2004) (emphasis added).

Taylor also claims that this affidavit would likely produce a different result at a new trial. He argues that "[t]hat testimony was a major piece of evidence at the trial because it supported the prosecution theory that Taylor shot Anderson 'knowingly or intentionally' as required by the murder statute." Id. However, as we have stated before, there was "overwhelming evidence" of Taylor's guilt. Taylor v. State, 676 N.E.2d 1044, 1047 (Ind. 1997). And although this affidavit might have weakened the State's case, Taylor has not shown that it is enough to make it probable that a different result would be produced at a new trial.

Because Taylor has failed to show that this affidavit "is not merely impeaching" and that "it will probably produce a different result at retrial," the affidavit does not qualify as newly-discovered evidence, and the post-conviction court was within its discretion to exclude it.

## II

Taylor raises in his petition for post-conviction relief the following issues that were available on direct appeal: (1) whether he was denied a fair trial and the due process of law to which he was entitled when the state pursued an accomplice liability theory at the end of his original trial; (2) whether the content and effect of the accomplice liability instructions given at his original trial were such as to entitle him to have his conviction vacated; and (3) whether his sentence of 60 years was manifestly unreasonable.

The purpose of a petition for post-conviction relief is to raise issues unknown or unavailable to a defendant at the time of the original trial and appeal. Grey v. State, 553 N.E.2d 1196, 1197 (Ind. 1990). When an issue is known and available but not raised on direct appeal, it is waived for post-conviction proceedings. Timberlake v. State, 753 N.E.2d 591, 597 (Ind. 2001), cert. denied, 537 U.S. 839 (2002).

Because these three issues are matters dealing with the original trial that were known and available on direct appeal, and Taylor failed to raise them at that time, he has waived the opportunity to raise them on his petition for post-conviction relief.

5

## III

Taylor argues that his trial counsel rendered ineffective assistance (a) by not objecting to the instructions and verdict form permitting his conviction without a unanimous verdict, (b) by failing to object to an instruction on the basis that it omitted an essential element of the offense, and (c) by failing to tender a lesser-included accomplice liability instruction.

The right to effective counsel is rooted in the Sixth Amendment of the United States Constitution. "The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results." Strickland v. Washington, 466 U.S. 668, 685 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686. When called upon to find whether there was ineffective assistance of trial counsel, a post-conviction court uses the analysis outlined by the Court in Strickland:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Id. at 687. A petitioner's failure to satisfy either prong will cause the ineffective assistance of counsel claim to fail. See Williams v. State, 706 N.E.2d 149, 154 (Ind. 1999).

# A

First, Taylor argues that his trial counsel rendered deficient performance by not objecting to the instructions and verdict form "permitting [his] conviction without a unanimous verdict." Br. of Petitioner-Appellant at 35. In the final instructions, the trial court stated, "Your verdict must represent the considered judgment of each juror. You must all agree on your verdict." Tr. at 241. The court also instructed: "The foreperson will preside over your deliberations and must sign and date the verdict[s] to which you all agree. Do not sign any verdict form for which there is not unanimous agreement." Tr. at 242.

As will be discussed in greater detail in Part III-B, infra, the State pursued two theories on how Taylor could be guilty of murder—either Taylor killed Anderson or Taylor aided and abetted Bowling to kill Anderson. Our opinion on direct appeal recited that seven of the jurors said after the trial that they did not believe that Taylor had been the actual shooter but had found him guilty of murder based upon the trial court's instructions regarding accomplice liability. Taylor v. State, 676 N.E.2d 1044, 1047 (Ind. 1997). Taylor argues that the jury should have been instructed that in order to convict him of murder, the verdict had to be unanimous on one of the two prosecution theories. To support this proposition, Taylor cites Townsend v. State, 632 N.E.2d 727 (Ind. 1994), and Castillo v. State, 734 N.E.2d 299 (Ind. Ct. App. 2000), summarily aff'd, 741 N.E.2d 1196 (Ind. 2001).

In Townsend, the defendant had been charged in a single count indictment with battery. The indictment read that the defendant "did knowingly or intentionally touch another person, to-wit: Sky Turney and Brian Turney, who were less than 13 years of age, in a rude, insolent, or angry manner; and did thereby commit Battery, a Class 'D' Felony." 632 N.E.2d at 729. The defendant had pled not guilty. In both the preliminary and final jury instructions, the trial court instructed on the essential elements of the charged crime as follows: "To convict the defendant, the State must have proved each of the following elements: The defendant (1) knowingly or intentionally (2) touched Sky Turney and Brian Turney (3) in a rude, insolent, or angry manner." Id. The court then gave four verdict forms with a standard final verdict instruction:

7

> We, the Jury, find [appellant] . . . guilty of . . . Battery against Sky Turney . . . .
>
> We, the jury, find [appellant] . . . not guilty of . . . Battery against Sky Turney . . . .
>
> We, the jury, find [appellant] . . . guilty of . . . Battery against Brian Turney . . . .
>
> We, the jury, find [appellant] . . . not guilty of . . . Battery against Brian Turney . . . .

Id. The jury rendered a verdict of guilty as to Sky and one of not guilty as to Brian. On appeal, one of the defendant's arguments was that he was wrongly subjected to two separate battery charges and convictions, where there was only one battery count. This Court found that "[t]he element instruction, quoted above, specifies the elements of the crime upon which the State bore the burden of proof and upon which a guilty verdict was required to rest. It required the State to prove a touching of both children." Id. at 730-31. It went on to hold that "[t]he trial court's verdict form instruction is diametrically opposed to the element instruction. It relieved the State of the need to prove the commission of a battery upon both children as charged." Id. at 731.

In Castillo, the State charged the defendant with one act of dealing in cocaine, even though there was evidence that the defendant committed two separate acts of dealing in cocaine. The charge read that the defendant "did knowingly deliver cocaine, pure or adulterated, within one thousand (1000) feet of school property . . . ." 734 N.E.2d at 304. Also, the prosecutor told the jury in his closing argument that "he had proved [that Castillo dealt in cocaine] twice but that they only had to find it either happened at Garcia's home or later at Castillo's home." Id. On appeal, the defendant argued, among other things, that "the trial court should have instructed the jury that they were required to unanimously agree upon which act supported the conviction for dealing in cocaine." Id. at 303. The Court of Appeals, vacating the defendant's conviction, held:

> The trial court did not instruct the jurors that they were required to render a unanimous verdict regarding which dealing crime Castillo committed. In fact, the trial court, in ruling on Castillo's continuing objection to the evidence of the earlier dealing crime, stated that because there was no specificity as to either of the dealing counts, the prosecution "could prove it as to one or the other . . . or

8

> both." It is possible, given these facts, that some jurors believed that Castillo committed the earlier dealing crime at Garcia's home while other jurors believed that Castillo committed the dealing violation at his home later that same day. Consequently, it is possible that the jury's verdict of guilty regarding the charge of dealing in cocaine was not unanimous.

Id. at 304-05.

Taylor's claim is notably different than those in Townsend and Castillo. In Townsend, we held that the indictment and jury instructions required that the State prove that the defendant touched both children in order for him to be convicted of battery as charged. The issue there was that the State was required to prove that the defendant committed the crime with which he was charged. Taylor was charged with the murder of Walter Anderson, and the relevant part of the instructions read: "To sustain the charge of murder, the State must prove . . . that Kenyan L. Taylor did (1) knowingly or intentionally, (2) kill, (3) Walter Anderson, or that Kenyan L. Taylor (1) knowingly or intentionally aided, induced or caused another person to (2) kill, (3) Walter Anderson." Tr. at 1282-83 (emphasis added). Here, the State must prove that Taylor murdered Anderson as charged, and the instructions allowed the jury to conclude that the State met its burden of proof on either theory; the State need not have proved them both.

In Castillo, the defendant was charged with only one count of dealing in cocaine, but the jury was presented with two entirely separate crimes from which it had to decide whether the defendant was guilty. The Court of Appeals determined that the jury was required to agree unanimously on which of the two crimes the defendant was guilty in order for the defendant to be convicted. The jury in Taylor's case, however, had to determine only whether Taylor committed the one act of murder. There were two different theories upon which the jury could have found that Taylor committed this one act—either as the principal or an accomplice. But "the Indiana statute governing accomplice liability does not establish it as a separate crime, but merely as a separate basis of liability for the crime charged." Hampton v. State, 719 N.E.2d 803, 807 (Ind. 1999). It is important to note that Taylor would have been equally guilty of murder whether he acted as the principal shooter or merely an accomplice. Johnson v. State, 687 N.E.2d 345, 349 (Ind. 1997). See Ind. Code § 35-41-2-4 (1998).

9

This issue has been addressed in a number of jurisdictions, and many have found—as do we—that while jury unanimity is required as to the defendant's guilt, it is not required as to the theory of the defendant's culpability. This concept is well illustrated by the California Supreme Court in People v. Jenkins, 997 P.2d 1044 (Cal. 2000).

In Jenkins, a jury had found Jenkins guilty of murdering a police detective, and Jenkins was sentenced to death. Id. at 1066-67. On appeal, Jenkins argued, among other things, that because the jury was instructed on accomplice liability as well as on premeditated murder, he had a constitutional right to have the trial court instruct the jury on the need for unanimity as to the facts upon which the conviction of murder was based. Id. at 1129. The California Supreme Court disagreed:

> It is settled that as long as each juror is convinced beyond a reasonable doubt that defendant is guilty of murder as that offense is defined by statute, it need not decide unanimously by which theory he is guilty. More specifically, the jury need not decide unanimously whether defendant was guilty as the aider and abettor or as the direct perpetrator. Not only is there no unanimity requirement as to the theory of guilt, the individual jurors themselves need not choose among the theories, so long as each is convinced of guilt.

Id. at 1130 (quotations omitted). See also, State v. McDonald, 981 P.2d 443 (Wash. 1999); State v. Tillman, 750 P.2d 546 (Utah 1987); People v. Marquez, 692 P.2d 1089 (Colo. 1984); Holland v. State, 280 N.W.2d 288 (Wis. 1979); cert. denied, 445 U.S. 931 (1980); Wells v. Commonwealth, 561 S.W.2d 85 (Ky. 1978); People v. Sullivan, 65 N.E. 989 (N.Y. 1903).

We recognize that other jurisdictions do require juror unanimity as to the theory of culpability. See State v. Boots, 780 P.2d 725 (Or. 1989); State v. Prouse, 767 P.2d 1308 (Kan. 1989); Probst v. State, 547 A.2d 114 (Del. 1988). But we find the California case discussed and other cases cited supra more convincing. In fact, the California Supreme Court suggests in its Jenkins opinion what likely happened in Taylor's case:

> Sometimes, as probably occurred here, the jury simply cannot de-

10

cide beyond a reasonable doubt exactly who did what. . . . [T]he jury need not unanimously agree on the precise factual details of how a killing under one or the other theory occurred in order to convict defendant of first degree murder. Naturally, in order to return a guilty verdict, the jury must agree unanimously that each element of the charged crime has been proved, but the factors that establish aiding and abetting liability are not included as elements of the crime of murder.

Jenkins, 997 P.2d at 1130 (quotations and citations omitted).

Because we find that the jury did not need to agree unanimously on which theory supported Taylor's murder conviction, there was no error in the trial court's instructions. Consequently, Taylor's counsel did not exhibit deficient performance by not objecting to the instructions and verdict form.

**B**

Next Taylor argues that his trial counsel's performance was deficient because he failed to object to an instruction on the basis that it omitted an essential element of the offense. This is the point on which the Court of Appeals agreed with Taylor and granted him post-conviction relief. Taylor v. State, 820 N.E.2d 691, 692 (Ind. Ct. App. 2005). The relevant portion of the instruction reads:

> The statute defining the offense which was in force at the time of the offense charged reads as follows:
>
> > [Indiana Code Section] 35-42-1-1  MURDER
> > A person who:
> > Knowingly or intentionally kills another human being commits murder, a felony.
>
> To sustain the charge of Murder, the State must prove the following elements:
>
> > That KENYAN L. TAYLOR did:
> > 1. knowingly or intentionally,
> > 2. kill,

11

           3. WALTER ANDERSON

      Or that KENYAN L. TAYLOR:
           1. knowingly or intentionally aided, induced or caused
              another person to,
           2. kill,
           3. WALTER ANDERSON

      If you find from your consideration of all the evidence that each of the elements, or one set of circumstances has been proved beyond a reasonable doubt, then you should find the defendant guilty of Murder.

      However, if you find from your consideration of all the evidence that any of the elements, of one set of circumstances has not been proved beyond a reasonable doubt, then you should find the defendant not guilty of Murder.

Tr. at 205-07.


      The Court of Appeals held that "[b]ecause the State pursued an accomplice liability theory and the instructions did not delineate that the person who was aided, induced or caused to kill had to commit such act knowingly or intentionally, we find to be unreasonable trial counsel's failure to object to the instruction and to tender an instruction explaining the requisite <u>mens rea</u> of a principal." <u>Taylor</u>, 820 N.E.2d at 695. The court went on to say that "there is a reasonable probability that had trial counsel objected to the accomplice liability instruction and tendered an instruction outlining all of the elements required to find Taylor guilty as an accomplice to murder, the jury's verdict would have been different . . . ." <u>Id.</u>


      Taylor argues that giving this instruction was fundamental error because if the jury had found that Bowling was the actual perpetrator, this instruction allowed the jury to find Taylor guilty of murder on an accomplice liability theory, even if the jury found that Bowling did not kill Anderson with the requisite mens rea for murder—knowledge or intent. Taylor's argument raises this question: Can an accomplice be guilty of a higher degree of homicide than the actual perpetrator of the killing? We have not had the opportunity to address this issue in the past, but courts in other jurisdictions have.

In State v. McAllister, 366 So.2d 1340 (La. 1978), McAllister and his co-felon Rachal were charged with and tried jointly for murder. The jury found Rachal guilty of manslaughter but could not reach a verdict as to McAllister. McAllister was then retried for murder but also convicted of manslaughter. McAllister appealed his conviction and sentence. Id. at 1341. One of his arguments on appeal was that "because one who aids and abets the commission of a crime is to be held equally as guilty as the perpetrator, he can not be charged with a higher degree of crime than that of which [the actual perpetrator] was convicted." Id. at 1343. The Louisiana Supreme Court rejected this argument, holding that "[o]ne who aids and abets in the commission of a crime may be charged and convicted with a higher or lower degree of crime depending on the mental element proved at trial." Id. (citing Oaks v. Patterson, 278 F. Supp. 703 (D. Colo. 1968)). The court went on to explain that "[t]he actual perpetrator of the crime may act in hot blood, in which case he would be guilty of manslaughter, while the instigator may act coolly and thus be guilty of murder." Id.

In Oates v. State, 627 A.2d 555 (Md. 1993), Oates and Giles were co-defendants in a trial for criminal homicide. The jury, concluding that Giles was the actual perpetrator and that he attacked the victim with a specific intent to kill, was found guilty of murder. The jury, however, concluding that Oates was a principal in the second degree and that he attacked the victim without the specific intent to kill, found him guilty of manslaughter. Id. at 557. Oates appealed his conviction arguing that the verdicts were "legally inconsistent" because he could not have aided and abetted a manslaughter when the person so aided and abetted was found guilty not of manslaughter but of murder. Id. at 558. The Maryland Court of Appeals, affirming the judgment, explained:

> The appellant betrays a lack of appreciation of the complex matrix of blameworthiness arising out of a single criminal homicide. The appellant was not in this case an aider and abettor to involuntary manslaughter any more than he was an aider and abettor to second-degree murder or an aider and abettor to first-degree murder. He was, purely and simply, an aider and abettor to criminal homicide, that and nothing more. When two or more persons are joint participants in a crime, they are joint participants only with respect to a single and common actus reus. Where, however, a single criminal act has different levels of blameworthiness contingent upon the

13

particular mens rea with which it is perpetrated, multiple partici-
pants in that crime do not necessarily share the same mens rea. Al-
though joint participation ultimately depends upon a mutual tie to
the same criminal act, the individual mentes reae or levels of guilt
of the joint participants are permitted to float free and are not tied
to each other in any way. If their mentes reae are different, their
independent levels of guilt, reflected by nondependent verdicts,
will necessarily be different as well.

Id.

Also, in People v. McCoy, 24 P.3d 1210 (Cal. 2001), McCoy and Lakey were tried jointly and convicted of homicides arising out of a drive-by shooting. The jury found that McCoy and Lakey were guilty of various crimes, including murder and attempted murder, and that McCoy fired the fatal bullets. Id. at 1212. The Court of Appeal reversed McCoy's murder and attempted murder convictions, finding that the trial court prejudicially misinstructed the jury on McCoy's theory of unreasonable self-defense. Had the jury accepted McCoy's theory, it would have reduced the crimes to voluntary manslaughter and attempted voluntary manslaughter. The Court of Appeal also reversed Lakey's murder and attempted murder convictions, in part because it found that "an aider and abettor cannot be convicted of an offense greater than that of which the actual perpetrator is convicted . . . ." Id. The California Supreme Court reversed the Court of Appeal judgment, holding that

[w]hen a person, with the mental state necessary for an aider and
abettor, helps or induces another to kill, that person's guilt is de-
termined by the combined acts of all the participants as well as that
person's own mens rea. If that person's mens rea is more culpable
than another's, that person's guilt may be greater even if the other
might be deemed the actual perpetrator.[2]

Id. at 1217.

We too find that an accomplice can be guilty of a greater homicide crime than the princi-
pal when the accomplice's mens rea is more culpable. Therefore, in the present case, an instruc-

---

[2] Acknowledging that it could not anticipate all possible non-homicide crimes or circumstances, the court limited this holding to homicide crimes. People v. McCoy, 24 P.3d 1210, 1217 n.3 (Cal. 2001).

tion that would allow a jury to find Taylor guilty of murder as Bowling's accomplice, even if it found that Bowling did not kill Anderson knowingly or intentionally, was not erroneous. If Taylor knowingly or intentionally aided and abetted Bowling to kill Anderson, Taylor can be found guilty of murder so long as (1) Bowling killed Anderson and (2) Taylor knew or intended that Anderson would be killed.[3] Because the instruction was not erroneous, Taylor's claim of ineffective assistance of trial counsel fails.

## C

Finally, Taylor argues that his trial counsel's performance was deficient because he failed to tender a lesser-included accomplice liability instruction or tell the jury that Taylor could not be convicted as an accomplice to murder because the State failed to prove that Bowling was not acting recklessly. Taylor reasons that because the State allowed Bowling to plead guilty to conspiracy to commit criminal recklessness and that there was evidence that Bowling was intoxicated when Anderson was killed, the court would have been obligated to give instructions on the lesser-included offense of accomplice to reckless homicide had such instructions been tendered.

We have read Taylor's argument with care and have concluded that it is a variation of his earlier argument that the instruction concerning Bowling's culpability erroneously omitted an essential mens rea requirement. In other words, Taylor's argument is premised on the erroneous idea that an accomplice's mens rea can be no higher that the principal's; that if Bowling's mens rea was reckless, then Taylor's could be no higher. But we concluded earlier that an accom-

---

[3] We note that this holding does not apply to accomplice liability cases dealing with attempted murder. In Bethel v. State, 730 N.E.2d 1242 (Ind. 2000), we dealt with whether there was sufficient evidence to support a defendant's attempted murder convictions. In Bethel, we held that in order to convict a defendant of aiding an attempted murder, the State must prove not only that the defendant, "acting with the specific intent that the killing occur, knowingly or intentionally aided, induced, or caused the accomplice to commit the crime of attempted murder," but also that the actual perpetrator, "acting with the specific intent to kill, took a substantial step toward the commission of murder." Id. at 1246 (emphasis added). The crime of attempted murder is subject to the special rule: "a conviction for attempted murder requires proof of specific intent to kill." Id. (citing Spradlin v. State, 569 N.E.2d 948, 950 (Ind. 1991)). This special rule is expressly limited to attempted murder prosecutions and is grounded in policy reasons. Richeson v. State, 704 N.E.2d 1008, 1010-11 (Ind. 1998).

15

plice's mens rea can be higher than the principal's. Taylor was not entitled to an accomplice to reckless homicide instruction,[4] and his counsel's performance was not deficient.

## IV

During his post-conviction proceedings, Taylor argued that he was denied effective assistance of appellate counsel because meritorious claims were omitted from the appellate brief. Specifically, Taylor argues that his appellate counsel should have raised the following issues on his direct appeal: (a) whether the court erred in allowing the State to introduce an accomplice liability theory at the end of the trial without notice to the defense, (b) whether it was fundamental error for the court to give improper accomplice liability instructions, and (c) whether Taylor's sentence was manifestly unreasonable.

The Sixth Amendment entitles a criminal defendant to effective assistance of counsel not only during trial, but also during his or her first appeal as of right. Evitts v. Lucey, 469 U.S. 387, 396 (1985). We have applied the Strickland two-pronged standard for evaluating claims of ineffective assistance of appellate counsel. Bieghler v. State, 690 N.E.2d 188, 192-93 (Ind. 1997). When a petitioner claims the denial of effective assistance of appellate counsel because counsel did not raise issues the petitioner argues should have been raised, reviewing courts "should be particularly deferential to counsel's strategic decision to exclude certain issues in favor of others, unless such a decision was unquestionably unreasonable." Id. at 194 (citing Smith v. Murray, 477 U.S. 527, 535-36 (1986)). But this does not end our analysis. Even if we determine that counsel's choice of issues was not reasonable, "a petitioner must demonstrate a reasonable probability that the outcome of the direct appeal would have been different in order to prevail." Stevens v. State, 770 N.E.2d 739, 760 (Ind. 2002), reh'g denied.

## A

Taylor contends that his appellate counsel should have raised as an issue whether the

---

[4] We recognize that Taylor might conceivably have been entitled to an accomplice to reckless homicide instruction if he was able to satisfy the requirements of Wright v. State, 658 N.E.2d 563, 566-67 (Ind. 1995). But Taylor makes no argument here under Wright.

16

court erred in allowing the State to introduce an accomplice liability theory at the end of the trial without notice to the defense. In its closing argument, the State explained to the jury that it could find Taylor guilty of murder if it believed either that he pulled the trigger himself or that he knowingly or intentionally aided Bowling to commit the crime. Taylor argues that this violated his rights to a fair trial and to due process of the law because "the defense could not possibly have anticipated that the State would pursue an accomplice liability theory at the close of all the evidence, and the change in the charge came far too late in the proceedings for the defense to recover." Br. of Petitioner-Appellant at 14.

Even if Taylor's appellate counsel had raised this issue, the reviewing court would not have found error. First, there is little merit in the argument that "the defense could not possibly have anticipated that the State would pursue an accomplice liability theory." Id. In Indiana, the responsibility of a principal and an accomplice is the same. An instruction on accomplice liability is proper where there is some evidence that a second party was involved in the crime. Wise v. State, 719 N.E.2d 1192, 1198 (Ind. 1999). Moreover, "one may be charged as a principal yet convicted on proof that he or she aided another in the commission of a crime." Id. Second, this Court has "reject[ed the] contention that due process requires that the State give a defendant some pretrial notice that it intended to try him as an accessory rather than as a principal." Id. at 1199 (quotation omitted).

The caselaw indicates that there was no error in allowing the State to pursue an accomplice liability theory at Taylor's trial. And we think these principles are valid even where the State proceeds during most of the trial on the primary theory that a defendant was the actual shooter. The caselaw provided sufficient notice to Taylor's defense counsel that the State had the option to pursue an accomplice liability theory. We do not find convincing Taylor's argument that allowing the State to wait until the end of the trial to pursue such a theory violated his rights to a fair trial and to due process of the law.

Taylor also argues that there was no support for the accomplice liability theory in the evidence and that in order to pursue an accomplice liability theory, the State had to "sponsor perjured testimony." Br. of Petitioner-Appellant at 13. Taylor reasons, "if Taylor indeed was only

17

the accomplice and Bowling was the actual shooter, then Bowling had committed perjury by testifying at the trial that Taylor shot Anderson." Id. We disagree. The State advanced two theories—either Taylor shot Anderson or Taylor aided or abetted Bowling to shoot Anderson. Therefore, Bowling's testimony could have advanced either theory without the State sponsoring perjury. The importance of Bowling's testimony was that it put Taylor at the scene of the crime; the fact that Bowling pointed to Taylor, rather than to himself, as the actual shooter is of secondary importance to his testimony that Taylor was at the scene during the shooting.

Because we find the State was entitled to pursue an accomplice liability theory, Taylor's appellate counsel did not render ineffective assistance by not challenging it.

**B**

Taylor also argues that his appellate counsel should have raised as an issue that it was fundamental error for the court to give improper accomplice liability instructions.

In Part I-B, supra, we found that Taylor does not prevail on his ineffective assistance of trial counsel claim because the instructions given by the court were not erroneous. For the reasons set forth supra, we find that the decision of Taylor's appellate counsel to not pursue this issue was reasonable.

**C**

Finally, Taylor contends that his appellate counsel should have raised as an issue whether his sentence was manifestly unreasonable and unsupported by sufficient aggravating circumstances and whether the sentencing court failed to recognize significant mitigating circumstances.

At the time of Taylor's sentencing hearing, the presumptive sentence for murder was 40 years, "with not more than twenty (20) years added for aggravating circumstances or not more than ten (10) years subtracted for mitigating circumstances." Ind. Code § 35-50-2-3(a) (1993).

18

The trial court identified the following aggravating circumstances: (1) the defendant had a prior criminal history, (2) a psychological evaluation indicated that Taylor had a character pathology that the court found to be "somewhat explanative" of Taylor's behavior in the present incident, (3) the imposition of a reduced sentence would depreciate the seriousness of the crime, and (4) the circumstances surrounding the crime were particularly heinous. Tr. at 1333-35. The court did not find any mitigating circumstances and sentenced Taylor to 60 years imprisonment—the maximum sentence.

The Indiana Constitution provides, "The Supreme Court shall have, in all appeals of criminal cases, the power to review all questions of law and to review and revise the sentence imposed." Ind. Const. art. VII, § 4. At the time of Taylor's sentencing, we employed a more deferential standard for reviewing sentences under this authority than we do today. We said then that an appellate court would not revise a sentence authorized by statute except where "no reasonable person could find such sentence appropriate to the particular offense and offender for which such sentence was imposed." Ind. Appellate Rule 17(B) (1995).[5]

But separate and apart from the constitutional review and revise authority, we have long required that when a trial court assigns a sentence other than the presumptive, the court must provide a statement of reasons:

> (1) It must identify all significant mitigating and aggravating circumstances—a failure to find either when clearly supported by the record may reasonably give rise to a belief that they were overlooked, hence not properly considered; (2) It must include the specific reason why each circumstance is mitigating or aggravating; and (3) The mitigating circumstances must be weighed against the aggravating factors in order to determine if the aggravating circumstances offset the mitigating circumstances. Some articulation of this balancing process must be made in the record by the trial judge.

---

[5] Effective March 1, 1997, we amended the rule to authorize an appellate court to revise a sentence if it found that the sentence was "manifestly unreasonable in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 17(B) (1998). Effective January 1, 2003, we again amended the rule to authorize an appellate court to revise a sentence if it finds "after due consideration of the trial court's decision," that a sentence is "inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B) (2005).

Jones v. State, 467 N.E.2d 681, 683 (Ind. 1984) (citations omitted).  When a trial court's sentencing statement is inadequate, a new sentencing proceeding may be required.  Bacher v. State, 686 N.E.2d 791, 800-02 (Ind. 1997).

Taylor argues that the trial court failed to consider the following mitigating circumstances that were apparent on the face of the record: (1) that Taylor was working and was the father of a young daughter with whom he lived, so his incarceration would cause an undue hardship to her; and (2) that Taylor had obtained his GED while he was incarcerated in the county jail awaiting his trial.  When "imposing an enhanced sentence, a trial court must identify all significant mitigating and aggravating circumstances."  Hunter v. State, 676 N.E.2d 14, 17 (Ind. 1996) (emphasis in original).  Though the court has discretion to increase or decrease a presumptive sentence based on aggravating and mitigating circumstances, the use of mitigating circumstances is not mandatory.  Id.  We find the mitigating circumstances that Taylor asserts sufficiently weak that there was no error in the trial court's failure to consider them.

However, we agree with Taylor that his appellate counsel should have challenged his sentence on grounds that, in supporting the imposition of the maximum sentence, the trial court incorrectly identified some aggravating circumstances.

The court incorrectly identified as an aggravating factor the fact that the "imposition of [a] reduce[d] sentence would depreciate the seriousness of the crime."  Tr. at 1334.  By the time of Taylor's sentencing, this Court had held on multiple occasions that that aggravator "may only be used when a trial court is considering imposition of a sentence which was shorter than the presumptive sentence."  Jones v. State, 675 N.E.2d 1084, 1088 (Ind. 1996).  Accord Mayberry v. State, 670 N.E.2d 1262, 1270 (Ind. 1996); Penick v. State, 659 N.E.2d 484, 488 (Ind. 1995); Evans v. State, 497 N.E.2d 919, 923 (Ind. 1986).  There is no evidence in the record that the trial court considered a sentence shorter than the presumptive.  The trial court erroneously used this factor to support a maximum sentence.

We also find the court's use of a 1987 psychological evaluation as an aggravating circumstance to have been improper. The evaluation determined that the defendant had been "spoiled and pampered for many years, and has generally developed little independence and responsibility." Tr. at 277. This Court has indicated that when a trial court speculates that past behavior or personality traits are related to the crime at hand, there needs to be some support in the record in order to use that as an aggravating circumstance. In Scheckel v. State, 620 N.E.2d 681 (Ind. 1993), the trial court, in supporting an enhanced murder sentence, found that "the defendant, when he abuses alcohol, can become violent, and this alcohol abuse and violence runs in his family in that his father was killed in a bar room fight and his father was an acknowledged alcoholic." Id. at 684. Although we found that there were enough valid aggravating circumstances to justify the imposition of the defendant's enhanced sentence, we noted:

> While there is ample evidence that the defendant had engaged in alcohol abuse, the record does not support the finding of prior alcohol-related violence. The evidence is likewise inadequate to demonstrate that family alcoholism and violence may be used as reliable predictors of the defendant's propensities for similar behavior. To this extent, the trial court's finding was error.

Id. For similar reasons, we find that this psychological evaluation—that was conducted six years before the crime took place—is inadequate to demonstrate that Taylor had the propensity to commit murder. Moreover, the trial court offers no explanation as to how this psychological evaluation is relevant, other than simply stating that it found the report to be "somewhat explanative" of the defendant's behavior. Tr. at 1334.

We also believe that the trial court gave too much weight to Taylor's prior criminal history. Taylor's prior adult criminal history contains only misdemeanors and infractions—carrying a handgun without a license and driving while suspended. The other offenses in the presentence report—resisting law enforcement, criminal trespass, violation of probation, and disorderly conduct—were from Taylor's juvenile record. Although "[a] juvenile history detailed in a presentence report filed with the trial court may suffice as evidence of a criminal history constituting an aggravating circumstance," Evans, 497 N.E.2d at 923, the fact that nothing in Taylor's juvenile history is particularly violent is important. In Ruiz v. State, 818 N.E.2d 927, 929 (Ind. 2004),

21

this Court noted that the "[s]ignificance [of a defendant's prior criminal history] varies based on the gravity, nature and number of prior offenses <u>as they relate to the current offense</u>." <u>Id.</u> (emphasis added) (quoting <u>Wooley v. State</u>, 716 N.E.2d 919, 929 (Ind. 1999)). While Taylor's prior criminal history is a valid aggravating circumstance, it would not support a maximum sentence because the crimes were not particularly grave or related to his murder conviction.

The trial court also supported Taylor's maximum sentence by finding that the facts surrounding the murder were particularly heinous. To support this finding, the court noted that the victim was killed at his residence, that the victim had been sick that day, that Taylor had been to the victim's residence several times that day to collect an alleged debt for an alleged illegal drug transaction, that the weapon used was especially dangerous, and that Taylor had made threats to the victim before the crime was committed. While this aggravating circumstance is generally valid, the evidence in the record does not support the court's finding that this crime was so heinous that it warrants an enhanced sentence. Caselaw that was available to Taylor's counsel suggests that when this aggravating circumstance is used to justify an enhanced sentence, the nature of the killings are brutal. <u>See, e.g.</u>, <u>Penick v. State</u>, 659 N.E.2d 484, 488 (Ind. 1995) (finding it heinous that the death of the victim at the hands of the defendant was painful and torturous to the victim); <u>Holmes v. State</u>, 642 N.E.2d 970, 972-73 (Ind. 1994) (finding it heinous that the defendant killed his parents in front of his nine-year-old sister); <u>Reaves v. State</u>, 586 N.E.2d 847, 852 (Ind. 1992) (finding it heinous that the murder resulted from the aggravated burglary of a 92-year-old man who was confined to his hospital bed). Additionally, the trial court made much of the fact that the weapon fired a shot that went through a door, but there is nothing in the record that suggests that the weapon was more dangerous than any other semi-automatic gun.

Finally, we find it significant that the sentence recommended in the presentence report was 45 years (40 years executed with credit for 1200 days for time served and good time, and five years suspended). The presentence report recommended that Taylor's prior criminal record be the sole aggravating circumstance.

To repeat, in order for an appellant to prevail on a claim of ineffective assistance of counsel, he must prove that his counsel's performance was deficient and that the deficient perform-

ance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Based on the Indiana authority available at the time of Taylor's sentence that supports the argument that some of the court's aggravators were improper and others were weak, Taylor's appellate counsel should have challenged Taylor's maximum sentence. We find that failure to do so amounted to deficient performance. We also find that in light of the improper and weak aggravators, along with the fact that the presentence report recommended executed time equal to the presumptive sentence, Taylor was prejudiced and deprived a fair appeal by his counsel's failure to raise his sentence as an issue.

We will occasionally remand a case to the trial court for a new sentencing order that responds to the concerns this Court has raised. The trial court may discharge this responsibility by "(1) issuing a new sentencing order without taking any further action; (2) ordering additional briefing on the sentencing issue and then issuing a new order without holding a new sentencing hearing; or (3) ordering a new sentencing hearing at which additional factual submissions are either allowed or disallowed and then issuing a new order based on the presentations of the parties." O'Connell v. State, 742 N.E.2d 943, 953 (Ind. 2001).

## Conclusion

We affirm the post-conviction court except with respect to the claim of ineffective assistance of counsel for failing to appeal Taylor's sentence, and we remand for a new sentencing order.

Shepard, C.J., and Boehm and Rucker, JJ., concur. Dickson, J., concurs, except as to Part IV-C, to which he dissents and would affirm the post-conviction court.

23