**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**JOHN ANDREW GOODRIDGE**
Evansville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DAVID D. PIKE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 82A01-1307-CR-321 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE VANDERBURGH SUPERIOR COURT
The Honorable Wayne S. Trockman, Judge
Cause No. 82D02-1110-FA-1103

**March 19, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

The victim, Timothy Morton, was attacked by several men, including the appellant-defendant, David Pike. As a result of the assault, Morton was hospitalized. He suffers from traumatic brain injuries and has flashbacks about the incident.

Pike appeals his convictions for Robbery Resulting in Serious Bodily Injury,[1] a class A felony, and Aggravated Battery,[2] a class B felony. We reject Pike's claims that various statements that he made to a detective should have been excluded from the evidence at trial, and we find that the jury was properly instructed. Finally, we conclude that the evidence was sufficient to support Pike's convictions.

FACTS

After arriving home from work on October 4, 2011, Morton took a nap and woke up around 11:00 p.m. Morton walked to a gas station to purchase snacks and cigarettes and then walked to the 711 Bar in Evansville.

Morton played a couple of games of pool and bought a beer. Morton saw Pike inside the bar but did not talk to him. About forty minutes later, Morton left the 711 Bar. Pike also left the bar, approached Morton, and asked for a cigarette. Morton gave him one and began walking home. At some point, Morton noticed a group of black males, including Pike, following him. According to Morton, Pike was wearing a white hat and a black t-shirt. Because he was being followed, Morton decided to take a detour. Morton stopped at another bar to use the restroom.

---

[1] Ind. Code § 35-42-5-1(2).

[2] I.C. § 35-42-2-1.5.

2

After Morton left the tavern, a vehicle pulled up and two black males exited the vehicle. Morton recognized the individuals from the group who had been following him. Morton noticed that the three other men who had been following him were walking down the alley. Morton began walking down Virginia Avenue, and Morton's friend, Jesse Adams, picked up Morton and drove him to Linwood Avenue to see one of Adams's friends.

After arriving on Linwood, Morton noticed Pike again and talked with him. Adams did not allow smoking in his vehicle, so Morton and Pike walked around and smoked cigarettes. At some point, Pike pinned Morton against the vehicle. Pike and one of the other men stole Morton's money. Morton noticed that some other men were running in his direction. Morton was then struck in the head and lost consciousness.

Early in the morning of October 5, 2011, Evansville Police Detective Michael Sides responded to a report of a person down in front of Work One on Walnut Street. When Detective Sides arrived in that area, he heard that the person was actually down on Linwood Avenue, which intersects with Walnut Street. Detective Sides found a man lying in the street, naked from the chest down. A t-shirt was pulled over his head, and his arms were above his head.

Detective Sides approached the male, who was later identified as Morton, and observed that he was lying face down, gasping for air. There were abrasions on Morton's back, and his head was bleeding. Detective Sides called for an ambulance, which arrived in five minutes. Morton's injuries were numerous and severe, including a traumatic brain

3

injury that resulted in Morton's hospitalization for several weeks. Morton also suffers from memory loss and has flashbacks from the incident.

On the evening that Morton was attacked, Robert Owens (Robert) saw Pike near the corner of Linwood and Cherry on two occasions. When Robert first saw Pike, he was with a white male. Pike walked in Robert's driveway while the white male remained on the street. Pike told Robert that the person he was with "had a little bit of change, little bit of money." Tr. p. 449. Robert told Pike to leave. When Robert saw Pike the second time, he told Pike and another black male who was with him to get out of there because of the police activity in the area.

Around the time that Morton was attacked, Beverly Owens (Beverly), whose house is located on the corner of Cherry and Linwood, was awakened by the sound of someone screaming. Beverly looked out her living room window and saw a young, white male wearing a t-shirt and blue jeans. It appeared to Beverly that the man was screaming because he was intoxicated. A few minutes after Beverly began watching the white male, a black male wearing a blue jersey approached the white male. The black male appeared to assist the white male, and they began walking down Linwood until Beverly could no longer see them. About ten minutes later, Pike ran up Linwood to Cherry Street carrying something in his hands. Police subsequently found Morton's jeans and underwear in a storm sewer near the corner of Linwood and Cherry.

Pike was transported to the Evansville Police Department on October 5, 2011. Captain Andy Chandler spoke to Pike while they waited for Detective Keith Whitler to

arrive and interview Pike. After Detective Whitler arrived, he advised Pike of his Miranda rights, which Pike indicated that he understood. Detective Whitler then told Pike about the robbery and attack on Morton and asked Pike if he knew Morton. Pike told Detective Whitler that he had been at the 711 Tavern with Morton, whom Pike referred to as his "dude." Tr. p. 532. Pike and Morton left the bar together, but parted ways, as Pike went first to his "baby momma's house" and then to his sister's house. Id. at 532-33. Pike initially denied being at the crime scene, but when Detective Whitler indicated there was evidence to the contrary, Pike acknowledged that he had been at the corner of Linwood and Cherry and stated that he had been drinking with Morton and another individual by the name of "Doty." Id. at 533-34.

Detective Whitler reviewed surveillance footage from the 711 tavern, which confirmed Pike's claim that he had left the bar with Morton. The video showed Pike and Morton walking west on Virginia Street. After Pike was arrested and held at the Vanderburgh County Jail, he made several calls to his girlfriend, Schreka Simpson. Pike told Simpson that the "sh*t happened at 1:40 [a.m.] when . . . wasn't nobody out there, man." Tr. p. 551. Pike said, "the statements that (indiscernible) is too mother fu*kin' familiar, man. For (indiscernible) some old lady lookin' out her window type sh*t. I mean, I know I'm gonna break it down." Id. at 553. Pike asked Simpson to "check to see if dude's still in the mother fu*kin' hospital, or if he was dead." Id. at 555. Pike told Simpson to not allow the detectives to "hold on to my sh*t." Id. at 557. Pike said,

"They can't hold me in here on Willy's mother fu*kin' statement." Id. Pike said he was not "really worried till I get pointed out . . . by the victim." Id. at 559.

On October 5, 2011, the State charged Pike with Count I, class A felony robbery, and the information on Count II for class B felony aggravated battery was amended on January 26, 2012. Thereafter, on May 15, 2012, Pike filed a motion to suppress, claiming that the statements that Pike made to the detectives were in violation of Miranda[3] and "were obtained as a result of a custodial interrogation by Officer A. Chandler of the Defendant. The statements of Defendant were later used during interrogation by Officer K. Whitler." Appellant's App. p. 68. Pike alleged that prior to his alleged interrogation by Officer Chandler, Pike was "not informed of his Miranda rights. Id. at 68-69. However, Officer Chandler explained to Officer Whitler that he and Pike were talking "just to pass the time," while they were waiting for Officer Whitler to arrive. Tr. p. 92. In other words, there was no evidence that Pike confessed to Officer Chandler and nothing of substance was discussed about the offense.

Following a hearing on the motion, the trial court ruled that

> any statements made by the Defendant to Detective Chandler, were pre-Miranda, interrogation in nature, and are therefore ordered suppressed. The statements made post-Miranda, by the Defendant to Detective Whitler, were voluntary and not given as the result of any coercion from the previous interrogation, and are therefore admissible."

Appellant's App. p. 80. Thus, the trial court granted Pike's motion to suppress in part and denied it in part.

---

[3] Miranda v. Arizona, 384 U.S. 43 (1966).

Pike's three-day jury trial commenced on May 20, 2013. At some point during the trial, Detective Whitler testified as to what Pike had said, and Pike was found guilty as charged. Thereafter, the trial court sentenced Pike to concurrent terms of forty years imprisonment on Count I and to fifteen years on Count II. He now appeals.

## I. Admissibility of Pike's Statements

Pike argues that his convictions must be reversed because the trial court should have excluded all of the statements that he made to the detectives. Specifically, Pike maintains that the "trial court erred in finding the post-Miranda interrogation of Pike was not tainted by the illegality of the first statement." Appellant's Br. p. 16. Therefore, Pike contends that "the belated advisement of rights did not render the second statement admissible" and none of his statements should have been admitted at trial. Id.

We note that while Pike originally challenged the admission of his statements through a motion to suppress, he appeals following a completed trial and thus challenges the admission of the evidence at trial. "Accordingly, 'the issue is more appropriately framed as whether the trial court abused its discretion by admitting the evidence at trial.'" Cole v. State, 878 N.E.2d 882, 885 (Ind. Ct. App. 2007) (quoting Washington v. State, 784 N.E.2d 584, 587 (Ind. Ct. App. 2003)).

Our standard of review for rulings on the admissibility of evidence is essentially the same whether the challenge is made by a pre-trial motion to suppress or by an objection at trial. Ackerman v. State, 774 N.E.2d 970, 974-75 (Ind. Ct. App. 2002). We do not reweigh the evidence, and we consider conflicting evidence most favorable to the

7

trial court's ruling. Collins v. State, 822 N.E.2d 214, 218 (Ind. Ct. App. 2005). We also consider uncontroverted evidence in the defendant's favor. Id.

A trial court has broad discretion in ruling on the admissibility of evidence. Washington, 784 N.E.2d at 587. Accordingly, we will reverse a trial court's ruling on the admissibility of evidence only when the trial court abused its discretion. Id. An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. Id.

In addressing Pike's arguments, we initially observe that Pike does not point to his objection at trial regarding the admission of any statements that he made to Detective Whitler. Rather, Pike contends that the trial court "erred in refusing to grant his motion to suppress evidence in its entirety." Appellant's Br. p. 15. Here, because Pike did not make a contemporaneous objection to the admission of the statements that he made to the detective, he has waived review of his statements' admissibility. Jackson v. State, 735 N.E.2d 1146, 1152 (Ind. 2000).

Waiver notwithstanding, we note that when an individual is in custody and subject to custodial interrogation, the police are required to advise the person of his or her rights, as set forth in Miranda. As noted above, in the pretrial ruling, the trial court determined that whatever Pike stated while talking to Detective Chandler before Detective Whitler

advised Pike of his <u>Miranda</u> rights was not admissible. However, any subsequent statements made to Detective Whitler were admissible.[4]

By way of analogy, in <u>Oregon v. Elstad</u>, 470 U.S. 298 (1985), the United States Supreme Court determined that a voluntary statement, given <u>after</u> the police provided a subject with <u>Miranda</u> warnings, is admissible, regardless of the fact that the suspect already made statements before receiving the warnings. The crucial fact is that both statements were not coerced. <u>Id.</u> at 317-18.

We acknowledge that a somewhat different result was reached in <u>Missouri v. Seibert</u>, 542 U.S. 600 (2004), where the confession at issue was obtained by using a two-step interrogation strategy that called for the <u>deliberate</u> withholding of the <u>Miranda</u> warnings until the suspect confessed, followed by a <u>Miranda</u> warning, and the defendant's repetition of his previous confession. <u>Id.</u> That plurality opinion in <u>Seibert</u> determined that the defendant's admission was inadmissible and concluded that the admissibility of a statement obtained in a "two-stage interview" depends on "whether the <u>Miranda</u> warnings given midstream could have been effective enough to accomplish their object." <u>Id.</u> at 615.

However, even in <u>Seibert</u>, one of the justices reasoned that the admissibility of post-warning statements should continue to be governed by the principles set forth in

---

[4] The State does not cross appeal and challenge the trial court's ruling in excluding the pre-<u>Miranda</u> statements that Pike made to Detective Chandler. It only responds to Pike's argument that the trial court erred in admitting the statements that Pike made to Detective Whitler following the advisement of the <u>Miranda</u> rights. More specifically, the State maintains that "Pike has failed to establish the trial court erred" in admitting those statements. Appellee's Br. p. 8.

<u>Elstad</u>, unless—like the circumstances in <u>Seibert</u>—a police officer purposely used a two-step interrogation technique designed to circumvent the rule in <u>Miranda</u>.

That said, even if we were to apply the rationale of <u>Seibert</u> in this case, there is no showing that the detectives employed a two-step interrogation process to circumvent the <u>Miranda</u> rule. Even more compelling, it is apparent that Detective Chandler and Pike primarily engaged in "small talk" while they waited for Detective Whitler to arrive. Tr. p. 92. Indeed, Pike did not admit to any wrongdoing in his conversation with Detective Chandler and did not make any comments as to if he knew Morton or had any contact with him. Therefore, unlike the situation in <u>Seibert</u>, the detectives did not interrogate Pike until he confessed, advise him of his <u>Miranda</u> rights, and then had Pike repeat the confession. In light of these circumstances, we conclude the trial court properly admitted Pike's statement that he provided to Detective Whitler. Thus, Pike's claim fails.

## II. Jury Instructions

Pike next claims that the jury was improperly instructed. Specifically, Pike argues that the trial court erred in instructing the jury on accomplice liability because there was no evidence that he acted in concert with anyone else.

In resolving this issue, we initially observe that the purpose of jury instructions is to inform the jury of the law applicable to the facts without misleading the jurors and to enable them to comprehend the case clearly and arrive at a just, fair, and correct verdict. <u>Munford v. State</u>, 923 N.E.2d 11, 14 (Ind. Ct. App. 2010).

The standard of review when challenging the trial court's decision to give or refuse an instruction requires us to consider (1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support giving the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions that were given. Springer v. State, 798 N.E.2d 431, 433 (Ind. 2003).

The trial court has discretion in instructing the jury, and we will reverse only when the instructions amount to an abuse of discretion. Id. To constitute an abuse of discretion the instructions given must be erroneous and the instructions taken as a whole must misstate the law or otherwise mislead the jury. Munford, 923 N.E. 2d at 11. We note that an instruction on accomplice liability is proper where there is some evidence that a second party was involved in the crime. Taylor v. State, 840 N.E.2d 324, 338 (Ind. 2006).

Here, the evidence showed that others assisted Pike in committing the crime against Morton. For instance, Morton testified that when Pike pinned him against a vehicle, Morton saw others running in his direction. Morton was then struck in the head and lost consciousness. Also, around the time that the assault occurred, Beverly observed Pike walk down Linwood after a white male and a black male had walked down the street. Approximately ten minutes later, Pike ran up Linwood to Cherry Street. Beverly observed that Pike was carrying something in his hands.

Robert testified that he saw Pike twice near the corner of Linwood and Cherry, which was in the vicinity where the police discovered Morton's jeans and underwear. Tr.

11

p. 500, 528-29. The first time that Robert saw Pike, he was with a white male. Pike walked onto Robert's driveway, while the white male stayed on the street. Id. at 448-49. As noted above, Pike told Robert that the person he was with "had a little bit of change, little bit of money." Id. at 449. This evidence indicated that Pike was looking for someone to help him take Morton's money. In response, Robert ordered Pike to leave. Id. When Robert saw Pike the second time, he was with a black male, and Robert again told Pike to "get out of there" because of the police activity. Id. at 450-51, 461.

Finally, when Pike spoke to Detective Whitler, he admitted that he was at the corner of Linwood and Cherry and stated he had been drinking with Morton and another man named "Doty." Id. at 533-34. All of this evidence supported the inference that Pike did not act alone in attacking and robbing Morton. Thus, we conclude that the trial court did not err in instructing the jury as to accomplice liability.

### III. Sufficiency of the Evidence

Pike claims that his convictions must be set aside because the evidence did not support his convictions. Specifically, Pike claims that "the accounts of the three eye witnesses at trial cannot be construed together or apart to conclude that Pike committed the charged offense beyond a reasonable doubt." Appellant's Br. p. 20.

In reviewing a challenge to the sufficiency of the evidence, we consider only the evidence most favorable to the verdict and any reasonable inferences that may be drawn from that evidence. McHenry v. State, 820 N.E.2d 124, 126 (Ind. 2005). If a reasonable finder of fact could determine from the evidence that the defendant was guilty beyond a

12

reasonable doubt, its verdict will be upheld. Baker v. State, 968 N.E.2d 227, 229 (Ind. 2012). We will not reweigh the evidence or judge the credibility of witnesses. Id. Such evaluations are for the trier of fact and not the appellate courts. McHenry, 820 N.E.2d at 126. The uncorroborated testimony of the victim is sufficient to sustain a conviction. Bailey v. State, 979 N.E.2d 133, 135 (Ind. 2012). Finally, conflicts in the evidence are for the jury to resolve. Soward v. State, 716 N.E.2d 423, 425 (Ind. 1999).

In this case, Pike contends that the State failed to prove that he was the individual who actually robbed and beat Morton. However, there is no distinction between the responsibility of a principal and an accomplice; nor are they separate crimes. Stokes v. State, 908 N.E.2d 295, 303 (Ind. Ct. App. 2009). In accordance with Indiana Code section 35-41-2-4, "a person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense. . . ." Moreover, an accomplice is criminally liable for all acts committed by a confederate which are a probable and natural consequence of their concerted action. Alvies v. State, 905 N.E.2d 57, 61 (Ind. Ct. App. 2009). Additionally, the evidence does not need to establish that the defendant personally participated in the commission of each element of a particular offense in order to sustain the defendant's conviction as an accomplice. Id.

As discussed above, Morton saw Pike inside the 711 Bar on the night in question. Morton gave Pike a cigarette and left the bar. As Pike started to walk home, he noticed a group of black males, including Pike, following him. At that point, Morton decided to take a detour. Morton then noticed Pike again and talked with him while they smoked

13

cigarettes. In a turn of events, Pike eventually pinned Morton against a vehicle and saw other individuals approach him. Morton was then struck in the head, lost consciousness, and was robbed of his money at some point. When the police officers saw Morton in the street, they noticed that he had been stripped of his underwear and jeans and had numerous injuries. This evidence was sufficient to establish Pike's involvement in the assault and robbery of Morton as either a principal or an accomplice. See Byrer v. State, 423 N.E.2d 704, 706-08 (Ind. Ct. App. 1981) (observing that while the defendant may not have actually committed the crime, there was sufficient evidence that he aided those who did commit the crime, and the robbery conviction was proper).

Although there were some minor discrepancies in Morton's identification of Pike as the perpetrator, Pike fails to demonstrate any basis for reversing his convictions. In fact, Morton accurately testified that Pike was taller than he was, that Pike had facial hair "like a goatee," and the police eventually located a black t-shirt inside a red pullover shirt, which Morton described that Pike was wearing at the time of the assault. Tr. p. 316, 482, 485. Also, Morton's testimony that Pike was wearing blue jeans was consistent with Robert's testimony that Pike was wearing dark pants, and Morton's contention that Pike was wearing a white hat was corroborated by the surveillance video from the 711 Bar. Id. at 451.

In conclusion, the testimony of the remaining witnesses corroborated Morton's testimony regarding Pike's involvement in the attack and was sufficient to establish Pike's participation in the crimes. Finally, Pike's statement over the telephone as

14

described above that he "was not really worried till [he gets] pointed out . . . by the victim" could also be viewed as an acknowledgement of guilt.

In short, Pike's arguments amount to a request to reweigh the evidence, which we will not do. Drane v. State, 867 N.E.2d 144, 146 (Ind. 2007). We conclude that the evidence was sufficient to support Pike's convictions.

The judgment of the trial court is affirmed.

NAJAM, J., and CRONE, J., concur.