## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 01 2017, 9:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Borahm Kim
Deputy Public Defender
Indianapolis, IN

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, IN

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jory D. Peters,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | September 1, 2017<br><br>Court of Appeals Case No.<br>45A03-1703-PC-393<br><br>Appeal from the Lake Superior Court, Criminal Division<br><br>The Honorable Samuel L. Cappas, Judge<br><br>The Honorable Natalie Bokota, Magistrate<br><br>Trial Court Cause No.<br>45G04-1511-PC-10 |

**Vaidik, Chief Judge.**

# Case Summary

Jory D. Peters was convicted of murder. His conviction was affirmed on direct appeal. He then sought post-conviction relief, alleging he was entitled to a new trial because of newly discovered evidence. The post-conviction court denied relief, concluding that Peters failed to prove that the newly discovered evidence would probably produce a different result at retrial. We affirm the post-conviction court.

# Facts and Procedural History

The facts underlying Peters's murder conviction, taken from this Court's opinion on direct appeal, are as follows:

> In July 2011, Crystal Mendez was driving in Gary with her mother and her brother, Juan Nieves. They noticed that a white Grand Prix was following them. The vehicle pulled beside Mendez's vehicle, and they saw Peters, who was driving the vehicle, look directly at them.

> On August 7, 2011, Mendez saw Peters again. She was driving with Nieves when they saw Peters driving a Chrysler 300 with a distinctive green paint pattern. Peters was driving slowly in front of them, so Mendez passed Peters and drove toward their home. When Mendez pulled into a gas station, Peters stopped in the middle of the street. Peters's passenger got out of the vehicle, and Mendez heard gunshots. Nieves told Mendez to go home, and he ran into the gas station.

> On August 14, 2011, Mendez was with her boyfriend's sister, Tiyona Dennie. Mendez again saw Peters driving the green

Chrysler 300. Mendez and Dennie started looking for Nieves to warn him that Peters was in the area. They located Nieves, warned him, and told him to go home. Mendez and Dennie then went to Mendez's house. As they reached the porch, they heard gunshots. Soon a girl rode up on her moped and said that Nieves's truck had crashed nearby. Mendez went to the scene, where she found Nieves's truck crashed into a tree and Nieves with several gunshot wounds, which were fatal.

On the same day, Annette Harmon was driving down 25th Avenue in Gary headed toward Broadway. In her rearview mirror, Harmon noticed a Chrysler 300 with a "funny green paint job" approaching at a high rate of speed. The vehicle passed Harmon, and she heard gunshots. Harmon "ducked" and, when she looked back up, she saw the Chrysler 300 driving the wrong way into oncoming traffic. The vehicle ran a red light and made a right turn on Broadway. Harmon saw a truck that was two cars in front of her turn a corner and drive into some bushes. Harmon and her passenger stopped to see if they needed help and called 911. The incident was recorded on video surveillance cameras of nearby businesses.

*Peters v. State*, No. 45A03-1305-CR-177 (Ind. Ct. App. May 28, 2014) (citations omitted), *trans. denied*.

[3] A detective with the Gary Police Department interviewed Peters in February 2012. During the two-hour interview, which was videotaped, Peters initially denied that he was in the area of the shooting on August 14, 2011. But after being shown surveillance photos of his car, Peters admitted that he was in the area but that he heard shots and "got out of Dodge." *See* Trial Tr. p. 485; Trial Ex. 83 (videotape). The detective gave Peters multiple opportunities to claim that he shot Nieves in self-defense, but Peters did not do so. For example, the

detective told Peters that the only thing that made sense to him was that Nieves was trying to kill Peters and that Peters shot him because he was trying to "defend himself." *See* Trial Ex. 83 (1:25:10-1:27:55). The detective even told Peters about a recent shooting in Gary where a person was not charged with any crimes because he acted in self-defense. Still, Peters maintained that he left the area when he heard shots.

[4] Thereafter, the State charged Peters with murder. A jury trial was held.[1] During trial, Peters's videotaped statement was played for the jury. In addition, through questioning of witnesses, defense counsel implied that Nieves had a gun, which Mendez removed from the truck before police arrived on the scene. *See* Trial Tr. p. 484. Before closing arguments, defense counsel asked the trial court to instruct the jury on self-defense. *Id.* at 483. Defense counsel argued that Peters's statement that he "heard shots" and "got out of Dodge" supported the instruction. *Id.* at 485. The State responded that Peters's statement was not enough because Peters never said "one way or the other[] whether he saw the victim with the gun," whether "the victim shot at him on that day," and whether he "did anything back to the victim on that day." *Id.* at 485-86. In addition, the State argued that Peters "never assert[ed] that he was afraid" or that "he had to do anything to protect himself." *Id.* at 486. The trial court refused to instruct the jury on self-defense, reasoning as follows:

---

[1] The first trial resulted in a hung jury, and a mistrial was declared.

> [I]f you review the defendant's statement, he denies ever being
> there. Repeatedly. The detective starts to make progress in his
> discussions with Mr. Peters, ultimately convinces Mr. Peters that
> Mr. Peters has or is found in the area, in his car, on the 14th,
> when he was adamant that he was home watching his children. .
> . . The part of the statement that the defendant talks about, he
> talks about ultimately, when he admits that he was in the area,
> that he heard shots and he got out of there. That was essentially
> it. . . . In light of his statement to the police, there is no
> appreciable evidence of self defense from the statement or the
> other evidence in the case . . . .

*Id.* at 500-503.

[5]   The jury found Peters guilty of murder, and we affirmed his conviction on direct appeal.[2] *Peters*, No. 45A03-1305-CR-177.

[6]   In 2015, Peters filed a pro se petition for post-conviction relief, which was amended by counsel in 2016. The amended petition alleged newly discovered evidence in that there was a newly discovered witness for the defense, Christopher Godines, whom Peters met while incarcerated. According to Godines, he saw Mendez take a gun from Nieves right after his truck crashed. Appellant's P-C App. Vol. II p. 52. The post-conviction court held a hearing on Peters's amended petition. The court first took judicial notice of the trial-court record. Godines then testified that he saw Mendez open the driver's door of Nieves's truck, fumble around inside, and return with a gun. P-C Tr. Vol. II p.

---

[2] Peters did not raise as an issue on appeal that the trial court erred in refusing to instruct the jury on self-defense.

25. Peters's trial counsel testified that he did not discover Godines until after trial and that he would have presented the testimony of Godines to support his theory of self-defense because it showed that the victim was armed. The post-conviction court made the following findings:

> 2. Prior to the filing of charges, Peters gave a statement to the police which was introduced at trial. State's Exhibit 83. Peters initially denied being present at the scene of the shooting that resulted in Nieves's death. Upon being shown still photographs of a video that captured his car at the scene, Peters alternatively conceded he was there . . . . At one point, Peters agreed with the detective that he heard shots and got out of there.
>
> * * * * *
>
> 9. Prior to closing arguments, the defense requested that the jury be instructed on self-defense. Counsel for Peters had implied through his questioning of witnesses that the victim had a gun that was removed prior to the arrival of the police. . . . The State argued that self-defense is a question of whether a defendant's actions were reasonable in response to a threat to him; Peters denied any action, having asserted that he heard shots and fled. There was no evidence that the defendant perceived a threat from the victim or was in fear of the victim and responded with some reasonable action. The court denied the requested instruction . . . .

Appellant's P-C App. Vol. II pp. 155, 157 (record citations omitted). The court outlined the nine-part test for newly discovered evidence but concluded that Peters failed to prove the final factor, that the newly discovered evidence will probably produce a different result at retrial:

4. Nothing about the testimony Godines offers would change the outcome of the case because it does not alter the fact that Peters never claimed that he acted in self-defense. Although his attorney implied that Peters acted in self-defense and suggested that the victim was armed, there was no evidence of this. The arguments of counsel are, of course, not evidence. Even with Godines's testimony, there is no evidence of self-defense. Even with Godines's testimony, the court would properly still deny a request for a self-defense instruction.

* * * * *

7. . . . In order to rely on the defense of self-defense, the defendant must have "acted without fault, been in a place where he had a right to be, and been in reasonable fear or apprehension of bodily harm." In his statement Peters negates self-defense. He claims that he heard shots and left the scene. He never claimed that Nieves fired a gun at him. He never claimed that he fired back to protect himself or anyone else. There is no evidence that Peters was in reasonable fear or apprehension of bodily harm from Nieves.

8. Even if the court granted a request to instruct the jury on self-defense, there is no possibility that the jury would acquit Peters on this basis for the same reasons. There is simply no evidence that Peters did anything in defense of self.

*Id.* at 159, 160 (citation omitted). Accordingly, the post-conviction court denied relief.

[7] Peters now appeals.

# Discussion and Decision

[8] Defendants who have exhausted the direct-appeal process may challenge the correctness of their convictions and sentences by filing a post-conviction petition. *Stevens v. State,* 770 N.E.2d 739, 745 (Ind. 2002), *reh'g denied.* Post-conviction proceedings are not an opportunity for a "super-appeal," and not all issues are available. *Timberlake v. State,* 753 N.E.2d 591, 597 (Ind. 2001), *reh'g denied.* Rather, subsequent collateral challenges to convictions must be based on grounds enumerated in the post-conviction rules. Ind. Post-Conviction Rule 1(1); *Timberlake,* 753 N.E.2d at 597. In post-conviction proceedings, complaints that something went awry at trial are cognizable only when they show deprivation of the right to effective counsel or issues demonstrably unavailable at the time of trial or direct appeal. *Sanders v. State,* 765 N.E.2d 591, 592 (Ind. 2002).

[9] Post-conviction proceedings are civil proceedings, requiring the petitioner to prove his claims by a preponderance of the evidence. *Stevens,* 770 N.E.2d at 745. We review the post-conviction court's legal conclusions de novo but accept its factual findings unless they are clearly erroneous. *Id.* at 746. The petitioner must establish that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court. *Smith v. State,* 770 N.E.2d 290, 295 (Ind. 2002).

[10] Peters contends that the post-conviction court erred in denying his request for a new trial based on newly discovered evidence. Newly discovered evidence

requires a new trial only when the petitioner demonstrates that: (1) the evidence has been discovered since trial; (2) it is material and relevant; (3) it is not cumulative; (4) it is not merely impeaching; (5) it is not privileged or incompetent; (6) due diligence was used to discover it in time for trial; (7) it is worthy of credit; (8) it can be produced upon a retrial of the case; and (9) it will probably produce a different result at retrial. *Taylor v. State*, 840 N.E.2d 324, 330 (Ind. 2006). We analyze "these nine factors with care, as the basis for newly discovered evidence should be received with great caution and the alleged new evidence carefully scrutinized." *Id.* (quotation omitted). The burden of showing that all nine requirements are met rests with the petitioner for post-conviction relief. *Id.*

[11] Here, the post-conviction court found that Peters failed to meet his burden of proving the final factor, that the newly discovered evidence will probably produce a different result at retrial. "A sufficient probability of a different result upon retrial is present where the omitted evidence creates a reasonable doubt that did not otherwise exist." *Fox v. State*, 568 N.E.2d 1006, 1008 (Ind. 1991).

[12] A valid claim of self-defense is legal justification for an otherwise criminal act. *Coleman v. State*, 946 N.E.2d 1160, 1165 (Ind. 2011). In order to prevail on a claim of self-defense, a defendant must show: (1) he was in a place where he had a right to be; (2) he acted without fault; and (3) he had a reasonable fear of death or great bodily harm. *Id.*; *see also* Ind. Code § 35-41-3-2. The evidence shows that the detective interviewed Peters for two hours. The videotape was admitted into evidence at the jury trial. During the interview, Peters initially

denied being in the area of the shooting. But after being shown surveillance photos of his car, Peters changed his story. Peters admitted being in the area but claimed that he left the area once he heard shots. The detective told Peters that the only thing that made sense to him was that Peters acted in self-defense. Peters, however, maintained that he left the area once he heard shots. Peters thus claimed the opposite of self-defense, that is, that he did **not** shoot Nieves. According to Godines, he saw Mendez remove a gun from Nieves's truck after it crashed. This testimony does not establish that Nieves pointed the gun in Peters's direction or fired it at him, or that Peters had a reasonable fear of death or great bodily harm. We therefore affirm the post-conviction court's conclusion that Peters failed to prove that the newly discovered evidence will probably produce a different result at retrial.

[13] Affirmed.

Mathias, J., and Crone, J., concur.